*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *THOMAS M. BROOKS,* ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| *v.* ) | *Civil No. 07-30-P-S* |
| ) | |
| *LOCAL S7, INTERNATIONAL* ) | |
| *ASSOCIATION OF MACHINISTS AND* ) | |
| *AEROSPACE WORKERS, AFL-CIO,* ) | |
| *et al.,* ) | |
| ) | |
| *Defendants* ) | |

*MEMORANDUM DECISION ON MOTION TO STRIKE AND RECOMMENDED*
*DECISION ON MOTIONS FOR SUMMARY JUDGMENT*

Both defendants seek summary judgment in this hybrid action alleging breach of contract against the plaintiff's former employer, Bath Iron Works Corporation ("BIW"), and breach of the duty of fair representation against the union local of which he is a member, Local S7 of the International Association of Machinists and Aerospace Workers, AFL-CIO (the "union"). The union has also moved to strike the plaintiff's response to its statement of material facts filed with its motion for summary judgment. The plaintiff, in turn, has moved after the fact for an extension of time in which to file his responses to the statements of material fact filed by both moving parties. I deny the motion to strike, grant the plaintiff's motion for extension in part, and recommend that the court grant the motions for summary judgment.

### I. The Motion to Strike

On May 23, 2008, defendant BIW filed a motion for summary judgment in this case. Docket No. 34. On June 6, 2008, the union also filed a motion for summary judgment. Docket

No. 38.  Each motion was accompanied by a statement of material facts, as required by this court's Local Rule 56.  Docket Nos. 35 & 39.  After filing two motions to extend his time to respond to these motions, Docket Nos. 44 & 47, both of which were granted, the plaintiff filed his opposition to BIW's motion for summary judgment and a statement of material facts in support of that opposition, and his opposition to the union's motion for summary judgment, on the last day of the extended period, July 7, 2008.  Docket Nos. 49 & 50.  The next day, July 8, 2008, the plaintiff filed a response to the statement of material facts that had been filed by the union.  Docket No. 54.

After obtaining requested extensions of time, Docket Nos. 55 & 56, BIW and the union filed their replies to the plaintiff's opposition to their motions on August 1, 2008.  Docket Nos. 59 & 63.  At that same time, the union also filed a motion to strike the plaintiff's response to its statement of material facts.  Defendant Local S7's Motion to Strike Plaintiff's Response to Local S7's Statement of Material Facts (Docket No. 61).  The plaintiff did not respond until one week later, when, on August 8, 2008, he filed a motion to extend the time to file his responses to both defendants' statements of material facts; to that motion, he attached for the first time his response to BIW's May 23 statement of material facts.  Motion for Enlargement of Time to File Responses to Bath Iron Works Corporation's Statement of Undisputed Material Facts and Local S7's Statement of Undisputed Material Facts (Docket No. 65).  Both defendants oppose this motion.  Docket Nos. 68 & 69.

The plaintiff offers no explanation for the untimely filing of the two responses to the defendants' statements of material facts other than that he and his assistant believed the responses had been timely filed, that neither opposing counsel raised any issue as to timeliness, and that the filing was complex.  Motion for Enlargement of Time at 1-3.  The applicable

2

standard when a request for an extension of time has not been made before a filing deadline passes is excusable neglect.  *Robinson v. Wright*, 460 F.Supp.2d 178, 180 (D. Me. 2006).  Contrary to the plaintiff's argument, however, his explanation is not sufficient to establish excusable neglect for failing to meet a court filing deadline.

> It is true that the excusable neglect inquiry involves a significant equitable component and must give due regard to the totality of the relevant circumstances surrounding the movant's lapse. . . .
>
> [A]s we have repeatedly held, even under the flexible standard prescribed by *Pioneer* [*Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)], counsels' inattention or carelessness, such as a failure to consult or to abide by an unambiguous court procedural rule, normally does not constitute excusable neglect.  Inadvertence, ignorance of the rules, or mistakes concerning construing the rules do not usually constitute excusable neglect.
>
> Moreover, among the factors enumerated in *Pioneer*, by far the most critical is the asserted reason for the mistake.

*Dimmitt v. Ockenfels*, 407 F.3d 21, 24 (1st Cir. 2005) (citations and internal punctuation omitted).   Still, it is within this court's discretion whether to allow the plaintiff's late filings. *Robinson*, 460 F.Supp.2d at 181.

The plaintiff's response to the union's statement of material facts was filed only one day after the deadline.  While the plaintiff was certainly dilatory in failing to request an extension for that late filing for another 31 days, which was seven days after the union filed its own motion to strike the plaintiff's response, the union also waited to file its motion to strike until it had filed its substantive reply to the plaintiff's opposition to its motion, making full use of the plaintiff's response to its statement of material facts in its reply.   Ultimately, it is the facts that the plaintiff's filing was only one day late and that the union had the benefit of that response to its statement of material facts throughout the extended time during which it was preparing its reply that carry the day.  The union's motion to strike is denied and the plaintiff's tardy motion for an

enlargement of one day for the filing of his response to the union's statement of material facts is granted.

The plaintiff's request for an extension of 31 days beyond the deadline for the filing of his response to BIW's statement of material facts is another matter. BIW had to file its reply to the plaintiff's opposition to its motion for summary judgment without the benefit of that response. The plaintiff casually observes that "BIW may want to modify its reply brief but that should not delay matters greatly." Motion for Enlargement of Time at 3.[1] This court cannot be cavalier about its deadlines. Compounding his neglect, the plaintiff waited a full week before filing his request for an enlargement and his response, even though he had clearly been informed by BIW of his failure to file a response to BIW's statement of material facts. Bath Iron Works' Reply to Plaintiff's Opposition to Bath Iron Works' Motion for Summary Judgment ("BIW Reply") (Docket No. 59) at 1 (document filed on August 1, 2008).

In *Dimmitt*, the First Circuit upheld the striking of a response to a moving party's statement of material facts that failed to comply with this court's Local Rule 56 and this court's decision not to consider a compliant statement of material facts filed 18 days after the applicable deadline for such a filing. 407 F.3d at 22-23, 24. Here, the delay was considerably longer, and the reasons advanced for the delay by the plaintiff no better. The plaintiff's request for an enlargement of time in which to file his response to BIW's statement of material facts is therefore denied. This ruling presents the court with a thornier path to resolution of the two defendants' pending motions for summary judgment, but that additional burden is preferable to the further delay that would necessarily result from granting the plaintiff's request for enlargement after the fact.

---

[1] BIW has requested an additional 11 days in which to file a supplemental reply memorandum should an order granting the plaintiff's requested enlargement be entered. Bath Iron Works' Opposition to Plaintiff's Motion for Enlargement of Time to File Responses (Docket No. 68) at 4. In light of the court's ruling, that request is moot.

## II.  Motions for Summary Judgment

### A.  Summary Judgment Standard

*1.  Federal Rule of Civil Procedure 56*.  Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*,  532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)).  "A fact is material if it has the potential of determining the outcome of the litigation."  *Id*. (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to

generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

2. *Local Rule 56*.  The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate

statement of fact."  *Id.*; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

### B.  Factual Background

The parties' respective statements of material facts and the responses thereto that are properly before the court[2] present the following undisputed material facts.

The plaintiff was at all relevant times employed by BIW and represented by the union. Bath Iron Works Corporation's Statement of Undisputed Material Facts ("BIW SMF") (Docket No. 35) ¶ 1.  The union is a labor organization within the meaning of the federal Labor-Management Relations Act ("LMRA"), the federal Americans with Disabilities Act ("ADA") and the Maine Human Rights Act ("MHRA").  Statement of Material Facts in Support of Defendant Local S7's Motion for Summary Judgment ("Union SMF") (Docket No. 39) ¶ 1; Plaintiff's Response to Local S7's Statement of Undisputed Material Facts ("Plaintiff's Responsive SMF") (Docket No. 54) ¶ 1.  BIW and the union have been parties to a series of

---

[2] Following its responses to the plaintiff's statement of material facts, the union has submitted what it calls "Defendant Local S7's Reply to Plaintiff's Response to Local S7 Statement of Undisputed Material Facts." Defendant Local S7's Response to Plaintiff's Statement of Material Facts ("Union Responsive SMF") (Docket No. 62), beginning at  20.  Local Rule 56 does not contemplate the filing of such a "reply," and indeed provides only for a reply to a non-moving party's request to strike one or more entries in a moving party's statement of material facts. Local Rule 56(e).  The plaintiff's response to the union's statement of material facts makes no request to strike any portion of the union's statement of material facts.  This court has consistently rejected any other attempted "replies." *See, e.g., Vertrue Inc. v. Graham*, 2007 WL 2198888 (D. Me. July 17, 2007), at *1; *Stevens v. Cedarapids, Inc.*, 2006 WL 412192 (D. Me. Feb. 17, 2006), at *1 n.2; *McCarthy v. Inhabitants of Town of Kennebunkport*, 2005 WL 217156 (D. Me. Sept. 8, 2005), at *5 n.9.  The summary judgment factual exchange stops at the second round, when a nonmoving party admits, denies, or qualifies each entry in the moving party's statement of material facts.  The exchange does not, and cannot, extend indefinitely.  The portion of the union's responsive statement of material facts that begins at page 20 is therefore stricken.

Collective Bargaining Agreements ("CBAs") covering the terms and conditions of employees represented by Local S7, including the plaintiff.  *Id.* ¶ 2.

BIW builds ships for the United States Navy.  *Id.* ¶ 3.  BIW charges the Navy for hours spent by its employees working on each individual ship or hull.  *Id.* ¶ 8.  Each hull has its own charge number so that accurate information can be delineated as to the cost of each particular ship.  *Id.* ¶ 9.  BIW employees are responsible for keeping accurate records of their time through an electronic accounting system called TAS for charging purposes.  *Id.* ¶ 10.  Some charges are charged directly to the Navy while other charges are charged to BIW overhead costs.  *Id.* ¶ 11.  Each employee is responsible for charging his or her time to the proper account.  *Id.* ¶ 12.  Article 43 of the CBA effective March 29, 2004 between Local S7 and BIW, Section IV – Discharge, Rule C (Fraud) states:

> Engaging in or knowingly benefiting from any activity for the purpose or with the result of causing unearned or unwarranted payment or benefits to himself or any other person[,] unauthorized altering of any document, falsification of any record or intentional omission of fact will not be tolerated.

*Id.* ¶ 13.  Similar, if not identical, provisions have been included in antecedent CBAs.  *Id.* ¶ 14.

BIW hired the plaintiff as a welder in 1979.  *Id.*  ¶ 4.  Since 1984, he has worked as a planner for BIW.  BIW's SMF ¶ 2.  The job as a planner primarily entailed supporting the people working on the ships by finding and delivering material to them.  Union SMF ¶ 6; Plaintiff's Responsive SMF ¶ 6.  The plaintiff's performance evaluations had noted that he had a problem with too much socializing and making personal phone calls during work.  BIW's SMF ¶ 3.  His 2003 and 2004 annual evaluations specifically recognized that he needed to minimize the amount of personal phone calls that he was making during work.  *Id.* ¶ 5.

The plaintiff was suspended by BIW in 2004 for conduct unrelated to his use of the telephone. *Id.* ¶¶ 7-8. He was returned to work pursuant to a Last Chance Agreement ("LCA"). *Id.* ¶ 9. In April 2004, the plaintiff agreed to the two-year LCA, which had been negotiated by BIW and the union. Union SMF ¶ 15; Plaintiff's Responsive SMF ¶ 15.[3] The LCA contained an express provision that any further violation of Section IV, C (Fraud) of the Rules of Conduct would subject the plaintiff to immediate discharge without recourse to the CBA's grievance and arbitration procedure, and reserved to BIW the final determination whether the plaintiff had violated the LCA. *Id.* ¶ 17. Under the terms of the LCA, any time the plaintiff missed from work due to illness or injury (other than FMLA leave) or layoff extended the duration of the LCA by a corresponding period. *Id.* ¶ 18.

In 1997, Kevin Gildart, a BIW executive, promulgated a memorandum to BIW management personnel reminding them that unauthorized use of BIW resources, including telephones, "may constitute theft, fraud, and/or mischarging of time and is subject to discipline up to and including discharge." *Id.* ¶ 20.

In the fall of 2004, Stacy Tower, BIW's Labor Relations Manager, planned to discharge Elaine Small, an employee in the human relations department, for fraud attributable to excessive personal telephone use while charging the Navy for time worked. *Id.* ¶ 24. Small's personal calls exceeded six hours in a month and generally were from five to 30 minutes in duration. *Id.* ¶ 25.[4] After Small explained at a meeting with Tower and the president of Local S7, Danny

---

[3] The plaintiff denies this paragraph of the union's statement of material facts, but his denial does not respond to any of the factual assertions made by the union in this paragraph. Plaintiff's Responsive SMF ¶ 15. Because those assertions are supported by the citations to the summary judgment record given by the union, they are deemed admitted.

[4] The plaintiff responds to this paragraph as follows: "Disputed. Plaintiff has asked for these records and BIW and Local S7 have failed to provide them." Plaintiff's Responsive SMF ¶ 25. It is not clear how the union would have access to BIW's telephone records, but, in any event, the plaintiff's remedy for a discovery violation is to ask the court to order BIW or the union to produce the records. He cannot wait until summary judgment motions are filed,

Loudermilk, that she was having personal problems, the two men met with BIW's director of labor relations, Gerald Stergio, who agreed to reduce Small's discharge to a suspension.  *Id.* ¶ 26. After Small met with Stergio privately, he agreed to not even suspend her.  *Id.* ¶ 27.  Tower and Loudermilk later learned that Stergio had agreed not to suspend Small after she presented Stergio with evidence that another employee represented by Local S7, Juanita Lozier, also had engaged in excessive telephone use but had only received formal counseling.  *Id.* ¶ 28.  One of Lozier's calls had exceeded 45 minutes.  *Id.* ¶ 29.[5]

After the Small incident, Stergio required the union to promulgate a memorandum to its members advising that, henceforth, excessive personal telephone calls on company time could subject an employee to discipline up to and including discharge.  *Id.* ¶ 31.[6]  By e-mail dated November 17, 2005, the union's secretary forwarded a letter from Loudermilk to employees represented by Local S7, including the plaintiff, with an attachment from Nancy Sweeney, BIW Labor Relations, warning that inappropriate use of BIW's telecommunications system could lead to immediate discipline, including discharge.  *Id.* ¶ 32.  The letter declared, in part:

> In light of recent issues surrounding inappropriate use of company email, phone and internet systems, please consider this letter as formal notification that all such incidents from this point forward will result in discipline in strict compliance with Statute 43, Section IV, Rule C (Fraud) of the current CBA.  Specifically, on a prospective basis, any employee represented by Local S7 who engages in deliberate mischarging of their labor is subject to immediate dismissal.

---

which generally takes place after discovery has closed, and use the unreported discovery violation as a shield to avoid having summary judgment entered against him.

[5] The plaintiff again responds that he "dispute[s]" this paragraph of the union's statement of material facts, Plaintiff's Responsive SMF ¶ 29, rather than interposing "Denied" as is required by Local Rule 56.  In any event, he also states that he "does not dispute that at least one of Lozier's calls exceeded 45 minutes[.]"  *Id.*  That is an admission of all that the union's statement asserts.  The plaintiff goes on to rely again on his assertion of a discovery violation by the defendants as the basis for a further factual assertion that he "cannot concede" that only one call exceeded that amount of time, but he is not being asked to make any such concession.

[6] Again, the plaintiff "dispute[s]" this paragraph of the union's statement of material facts on the grounds that the defendants failed to provide relevant records that he requested.  Plaintiff's Responsive SMF ¶ 31.  Again, this assertion does not support a denial of the substance of the paragraph, for the reasons stated in footnote 4, *supra.*

*Id*. ¶ 33.  Loudermilk's letter to the members stated: "I received this letter from Labor Relations dealing with non-business e-mails, phone calls, and internet use during business hours.  I can tell you the Director of Labor Relations considers this Fraud and in his mind is worthy of dismissal." *Id*. ¶ 34.  The plaintiff subsequently signed a muster sheet acknowledging that his supervisor, Mark Stupinski, had reviewed the BIW policies concerning mischarging of labor with him.  *Id*. ¶ 35.

Near the end of March, 2006, union steward Bruce Harvey asked Tower when the plaintiff's LCA would expire.  *Id*. ¶ 36.  Tower subsequently scheduled a meeting for June 27, at which the plaintiff anticipated that his LCA would be terminated.  *Id*. ¶ 37.   In the interim, supervisor Eric Suehrstedt reported to Tower that another BIW supervisor, Dan Cox, had complained to the plaintiff's supervisor, Mark Stupinski, that the plaintiff was spending an inordinate amount of time on the phone.  *Id*. ¶ 38.  Suehrstedt spoke to Stupinski and reviewed telephone records for the extension in the plaintiff's office.  *Id*. ¶ 39; BIW SMF ¶ 14.  Suehrstedt concluded that the plaintiff was spending a significant amount of time on the telephone and that further investigation was warranted.  BIW SMF ¶ 15.  Suehrstedt concluded that the plaintiff appeared to have spent 8% of his work time in March 2006 on non-work-related calls, which Suehrstedt deemed inappropriate.  Union SMF ¶ 40.[7]  Suehrstedt asked Tower to investigate the plaintiff's telephone use.  *Id*. ¶ 41, BIW SMF ¶ 19.

Tower obtained telephone and e-mail records for the plaintiff for the months of March, April, May, and June 2006.  Union SMF ¶ 42; Plaintiff's Responsive SMF ¶ 42; BIW SMF ¶ 21.

---

[7] The plaintiff "dispute[s]" this paragraph of the union's statement of material facts, but the basis given is the following: "The e-mail [cited by the union] represents the writer's conclusion without supporting documentation or proof that the personal calls were not work related or made by [the plaintiff]."  Plaintiff's Responsive SMF ¶ 40. Paragraph 40 of the union's statement of material facts presents only Suehrstedt's conclusions.  The plaintiff cites no authority for the proposition that such statements must also include evidence that proves the conclusions to be true, and I am not aware of any.  The paragraph is supported by the citation given by the union and accordingly is deemed admitted.

Tower's review suggested that the plaintiff was spending an inordinate amount of time on non-work-related calls.  Union SMF ¶ 42; Plaintiff's Responsive SMF ¶ 42.  His review indicated that the plaintiff was spending a significant amount of time on the telephone to certain numbers that were not internal BIW numbers.  BIW's SMF ¶ 22.  On June 27, 2006, Tower interviewed the plaintiff about his use of his office telephone for non-work-related calls.  *Id*. ¶ 26.  The plaintiff, shop steward Harvey, BIW's labor relations representative, Ralph Lenfesty, and Tower attended the June 27 meeting at which this interview took place.  Union SMF ¶ 46; Plaintiff's Responsive SMF ¶ 46.

The plaintiff admitted that he engaged in personal calls on company time and that he had charged the time involved in such calls to multiple DDG hulls (ships being built by BIW for the Navy) when so engaged.  *Id*. ¶ 49.  The plaintiff voluntarily identified the telephone numbers that he called often, which were his girlfriend's work and home numbers and his calling card.  BIW's SMF ¶¶ 27-28.  On March 3, 2006, alone, the plaintiff made at least twenty-one personal calls, totaling 80 minutes.  Union SMF ¶ 50; Plaintiff's Responsive SMF ¶ 50.  At the end of the meeting, Tower suspended the plaintiff pending investigation.  *Id*. ¶ 51.  After the meeting, Tower determined that (1) during March 2006, the plaintiff made 39 calls to the three identified numbers that lasted a total of 6.3 hours or 5.6 % of the time that the plaintiff spent at work in March; (2) during April 2006, the plaintiff made 61 calls to the three numbers that lasted a total of 10.75 hours or 8.7% of the time that he spent at work in April; (3) during May 2006, the plaintiff made 66 calls to the three numbers that lasted a total of 10.95 hours or 7.7% of the time that he spent at work in May; and (4) during June 2006, the plaintiff made 65 calls to the three numbers that lasted a total of 5.39 hours or 4.2% of the time he spent at work in May.  BIW SMF ¶ 29.

On June 28, 2006, Local S7 President Loudermilk began an investigation into BIW's allegations against the plaintiff. Union SMF ¶ 52; Plaintiff's Responsive SMF ¶ 52. Loudermilk requested and reviewed telephone records showing that over a four-month period, the plaintiff had spent 33.47 hours on personal calls to or from the three identified telephone numbers. *Id.* ¶ 53. In addition, Loudermilk noted voluminous calls from the plaintiff's extension which he had not admitted to, some of which undoubtedly were not work-related. *Id.* ¶ 54.[8] BIW's records also showed that external calls from the plaintiff's extension were greatly reduced on dates when the plaintiff was absent from work, and that there were no calls to the numbers which the plaintiff had identified as personal on those dates. *Id.* ¶ 55. The plaintiff could not identify any individual who had made a 54-minute call from his extension. *Id.* ¶ 56. The plaintiff admits that he had been making or receiving non-work-related telephone calls by using the fax machine and telephone in his work area for years, including the period of the LCA. BIW SMF ¶ 31. He admitted to participating in hours of personal telephone calls during working hours. *Id.* ¶ 32.

Tower believed that the plaintiff should be terminated for his personal telephone call use as it constituted fraud under the CBA and it violated the plaintiff's LCA. *Id.* ¶ 34. He conferred with Suehrstedt, who agreed that the plaintiff's actions warranted termination. *Id.* ¶ 35. Stergio is vested with the authority to discipline union-member employees for violating BIW's labor agreements. *Id.* ¶ 36. The plaintiff's LCA also granted Stergio responsibility for determining whether the plaintiff violated the LCA and whether to terminate him for any violation. *Id.* ¶ 37. Tower informed Stergio of his recommendation that the plaintiff be terminated and that Suehrstedt agreed with this recommendation. *Id.* ¶ 38. After considering all of the facts and

---

[8] The plaintiff "dispute[s]" this paragraph of the union's statement of material facts, but states nothing further, Plaintiff's Responsive SMF ¶ 54, in violation of the requirement of Local Rule 56(c) that each denial be supported by a citation to the summary judgment record. Because it is supported by the citations given to the summary judgment record, paragraph 54 of the union's statement of material facts is therefore deemed admitted.

circumstances, Stergio decided that the plaintiff should be terminated for fraud in violation of the CBA.  *Id.* ¶ 39.  On July 10, 2006, BIW terminated the plaintiff for this reason.  *Id.* ¶ 41.

Because BIW maintained that the LCA was still in effect when the plaintiff was suspended on June 27, 2006, as a result of his absences from work prior to that date, and that the union therefore could not pursue any grievance for the plaintiff with respect to his telephone calls, Loudermilk and the union's international representative, Joe Flanders, attempted to calculate whether the LCA was still in effect on that date.   Union SMF ¶ 57; Plaintiff's Responsive SMF ¶ 57.   Including absences of fewer than eight hours and vacation time, but not time on family medical leave ("FMLA"), Loudermilk and Flanders concluded that the plaintiff's absences for accident, sickness, and personal business added up to 52 days, meaning that the LCA was still in effect on June 27, 2006.  *Id.* ¶¶ 58-60.[9]

By letter dated July 10, 2006, BIW advised the plaintiff and the union that it had decided to discharge the plaintiff for fraud.  *Id.* ¶ 61.  On July 17, 2006, Loudermilk and Harvey met with the plaintiff to review his case.  *Id.* ¶ 62.  At the meeting, the plaintiff again admitted that he had made personal calls on BIW time but asserted that everyone else did so as well.  *Id.* ¶ 63.  He claimed that he could work while making the calls and that his supervisor, Stupinski, had approved his making of personal calls up to 45 minutes in length.  *Id.* ¶ 65.  He also stated that he had been diagnosed with attention deficit hyperactivity disorder ("ADHD") and bipolar disorder.  *Id.* ¶ 66.

---

[9] The plaintiff "dispute[s]" paragraph 58 of the union's statement of material facts, adding "[s]ee Exhibit 10." Plaintiff's Responsive SMF ¶ 58.  He admits paragraph 59 and does not respond to paragraph 60, which is deemed admitted.  Exhibit 10 to Plaintiff's Statement of Material Facts ("Plaintiff's SMF") (Attachment 1 to Docket No. 49) is a document on the union's letterhead, entitled "In the matter of;/Thomas Brooks/Violation of Article 43, Section IV, C/Unjust Discharge," and appears to be an appeal from the plaintiff's discharge.  The plaintiff's citation to the entire five-page document, without a pinpoint citation, is insufficient.  Assuming that the plaintiff means to cite the portion of this document that takes the position that the LCA expired on June 26, 2006, rather than June 27, 2006, the document is not signed by either Loudermilk or Flanders and is in any event not a contradiction of their own personal opinions.  It cannot be unusual for a union to express to an employer a position in support of one of its members that is inconsistent with the personal opinions of one or more of the union's officers.

With the plaintiff's approval, Loudermilk wrote to the plaintiff's psychiatrist, Dr. Fischman, to verify the claim and seek support for the position that these impairments had contributed to the behavior at issue.  *Id.* ¶ 67.  Loudermilk subsequently received a letter from Dr. Fischman supportive of the plaintiff's claims.  *Id.* ¶ 68.  Immediately after the July 17 meeting, Loudermilk and Harvey interviewed Stupinski, who denied that he had ever authorized the plaintiff's lengthy telephone calls, although he admitted that he had one time told Juanita Lozier that calls up to 45 minutes would not raise a "red flag."  *Id.* ¶¶ 69-70.  Stupinski also told Loudermilk and Harvey that other S7 members had complained about the amount of time that the plaintiff spent on the telephone and was away from his job, and that he had tried to talk to the plaintiff about his job performance and lengthy telephone calls, but that the plaintiff had "flown off the handle."  *Id.* ¶ 71.

On July 25, 2006, the union filed a timely grievance protesting the plaintiff's termination, even though at that point it appeared to Loudermilk that (1) the plaintiff was still on the LCA when BIW suspended him; (2) even if the LCA had expired, the plaintiff had made excessive telephone calls while on the LCA; (3) the plaintiff had received notice of BIW's telephone policy; (4) the plaintiff had admitted making numerous personal calls while on company time in violation of the policy; and (5) no other union member had engaged in similar conduct since November 2005.  *Id.* ¶ 72.[10]  On July 27, 2006, BIW agreed to hold in abeyance the issue of the effect of the LCA pending the outcome of the grievance meeting and the union's decision whether to arbitrate.  *Id.* ¶ 73.  The parties met on August 8, 2006, to review the grievance.  *Id.* ¶ 74.

---

[10] The plaintiff does not dispute the fact that the union filed a grievance on this date, but asserts that "[t]he rest of the statement is not fact."  Plaintiff's Responsive SMF ¶ 72.  This apparent denial lacks the citation to the summary judgment record that is required by Local Rule 56(c).  Because "the rest of the statement" is supported by the citation to the summary judgment record given by the union, it is deemed admitted.

In preparation for this meeting, Loudermilk conducted research into past arbitration decisions and prepared a lengthy memorandum that articulated the plaintiff's positions, including several arguments that Loudermilk had concluded were not supported by the investigation. *Id*. ¶¶ 75-76.   On August 8, prior to the review hearing, Loudermilk and shop stewards Narda Hinkley and Fowler met with the plaintiff for about an hour to discuss the merits of his case. *Id*. ¶ 77.   At this meeting, Loudermilk encouraged the plaintiff to disclose his diagnoses to BIW, reminding him that his job was at stake and that the union should hold nothing back. *Id*. ¶ 79. The plaintiff eventually agreed that the union could present this evidence. *Id*. ¶ 81.   At the hearing, Loudermilk made virtually all of the arguments that the plaintiff wanted to present. *Id*. ¶ 82.   Specifically, he argued that the LCA had expired; that Stupinski had authorized the telephone calls; that the plaintiff was able to work while on the telephone; that others had engaged in comparable conduct without similar consequences; and that the plaintiff's medical condition had prompted the behavior. *Id*. ¶ 83.

By letter dated August 18, 2006, BIW denied the plaintiff's grievance, asserting that the plaintiff had violated "the negotiated rules of conduct as well as the Last Chance Agreement." *Id*. ¶ 84.   The next step in the grievance process would have been to arbitrate the plaintiff's termination.   BIW's SMF ¶ 44.   The union's Grievance Committee, including Loudermilk, Hinkley, Fowler, and Gary Wright, met for about an hour and voted unanimously, with Loudermilk not voting, not to take the plaintiff's grievance to arbitration.   Union SMF ¶¶ 85-86; Plaintiff's Responsive SMF ¶¶ 85-86.   None of the voting members based their decision on the plaintiff's medical situation.   *Id*. ¶ 87.[11]   The three members all declined to arbitrate the grievance because they felt that the grievance could not be won due to some or all of the

---

[11] The plaintiff "dispute[s]" this paragraph of the union's statement of material facts, but makes no citation to the summary judgment record in support of this position.  Plaintiff's Responsive SMF ¶ 87.  For the reasons already discussed, the paragraph is accordingly deemed admitted.

following factors: (1) they did not believe that the LCA had expired; (2) even if the LCA had expired, the plaintiff had admitted to violating BIW's fraud policy while on the LCA; (3) the plaintiff's e-mails indicated that he had notice of the fraud policy; (4) the plaintiff's violation of the policy was extensive; (5) no others had engaged in comparable conduct while on a Last Chance Agreement; (6) Stupinski had denied authorizing the conduct; and (7) they did not believe that the plaintiff was credible or would make a good witness. *Id.* ¶ 89.[12]  By letter dated August 30, 2006, and by telephone call that day, the union informed the plaintiff that it would not take his case to arbitration. *Id.* ¶ 90.

The plaintiff's mental conditions played no role in the decision to terminate him.  BIW SMF ¶ 52.[13]

Dr. Fischman opined that there was a link between the plaintiff's mental conditions and his making of telephone calls from work in that the plaintiff feels more pressure to talk to people and has a hard time determining when to end conversations.  Plaintiff's SMF ¶ 93; Bath Iron Works Corporation's Reply to Thomas M. Brooks' Statement of Material Facts (Docket No. 60) ¶ 93; Defendant Local S7's Response to Plaintiff's Statement of Material Facts (Docket No. 62) ¶ 93.

---

[12] The plaintiff "dispute[s]" this paragraph of the union's statement of material facts, but includes no citation to the summary judgment record to support his conclusory assertion that "[t]hese stated reasons are a pretext."  Plaintiff's Responsive SMF ¶ 89.  For the reasons already discussed, the paragraph is accordingly deemed admitted.

[13] I note that the plaintiff's "dispute" of this  paragraph of BIW's statement of material facts (were his response to BIW's statement of material facts properly part of the record in this case) is largely nonresponsive and contains blanks where one would expect to see citations to the record.  The only portion of the response that is arguably responsive is an assertion, unsupported by any citation to the summary judgment record, that BIW had knowledge of the asserted disability at the time the decision was made.  Plaintiff's Response to Bath Iron Works Corporation's Statement of Undisputed Material Facts (Attachment 3 to Docket No. 65) ¶ 52.  BIW has admitted that it had such knowledge at that time. *See, e.g.,* BIW SMF ¶ 48.  The fact that the decision-makers had such knowledge does not contradict their sworn statements that the knowledge played no role in their decision to terminate the plaintiff's employment.

### C. Discussion

The defendants agree that this is a "hybrid" case, that is, a case in which a plaintiff alleges both breach of a collective bargaining agreement by his or her employer and breach of the duty of fair representation by his or her union.  Bath Iron Works Corporation's Motion for Summary Judgment ("BIW Motion") (Docket No. 34) at 2; Defendant, Local S7, International Association of Machinists and Aerospace Workers, AFL-CIO's, Motion for Summary Judgment ("Union Motion") (Docket No. 38) at 1.  The plaintiff does not disagree.  The First and Second "Claims" of the amended complaint assert these claims.  Amended Complaint (Docket No. 72) ¶¶ 30-37.[14]  Counts III and IV allege disability discrimination against BIW and the union, respectively, in violation of federal law, and Count V alleges such discrimination against both defendants in violation of state law.  *Id.* ¶¶ 38-48.

### 1.  The Hybrid Action  (Counts I and II)

An employee who is a member of a union which has a collective bargaining agreement with his or her employer must exhaust any applicable grievance or arbitration remedies provided in that agreement before resorting to judicial examination of his or her grievable claim.  *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 163-64 (1983); *Williams v. Sea-Land Corp*., 844 F.2d 17, 18-19 (1st Cir. 1988).  When the employee alleges that the union acted in a discriminatory, arbitrary, dishonest, or perfunctory manner in handling the grievance, he or she may bring a hybrid suit against both the union, for breach of its duty of fair representation, and the employer, for violation of the collective bargaining agreement.  *Id*. at 164-65.  To prevail against either the union or the employer, the employee must prove his or her claim against both.

---

[14] The plaintiff's Amended Complaint refers to First through Fifth Claims, but I shall generally refer to them herein as Counts I through V for ease of reference.

*Id*. at 165.  Failure to prove either "results in failure of the entire hybrid action."  *Miller v. United States Postal Serv*., 985 F.2d 9, 11 (1st Cir. 1993).

The reported case law in the First Circuit suggests that courts have generally addressed claims asserted against unions before claims asserted against employers in hybrid actions.  I will proceed in that fashion as well.

The plaintiff asserts that the union breached its duty of fair representation because (1) it refused to take his case to arbitration when he was the first person discharged by BIW "solely for alleged improper personal telephone use"; (2) the union had a valid argument that the LCA had expired at the time the discipline was imposed and that the LCA could not be used to deny him the protections of the contract or the benefits of arbitration; (3) the union had arguments that discipline had not been applied equally or progressively to the plaintiff "in clear violation of the language of the CBA"; (4) the union agreed to side with BIW before the August 8 meeting, making the meeting "nothing but a charade";[15] (5) arbitration is the only part of the grievance process where a third party reviews and rules on BIW's decision, and filing for arbitration creates leverage over BIW to settle; (6) the union steward, Harvey, knew that Tower intended to suspend the plaintiff for alleged improper telephone usage before the June 27 meeting; (7) union steward Cindy Fowler tried to change her testimony about this point "after discussing it with Union counsel during the break in her deposition"; (8) the union did not provide the plaintiff with appropriate counseling before the June 27 meeting, which led to the plaintiff providing information which BIW used against him; (9) the union was aware of the plaintiff's history of medical leaves and disability yet did not check the family leave records to be sure that his leaves had been properly recorded; (10) Loudermilk was reluctant to send a letter to the plaintiff's

---

[15] The plaintiff consistently refers to this meeting as "the August 10th meeting."  Union Opposition at [2].  I cannot find authority in the summary judgment record for this date.  I do not believe, in any event, that the question whether the meeting occurred on August 8 or August 10 has any bearing on the outcome of this case.

psychiatrist, "preferring to leave it to [the plaintiff] to ask him for information helpful to his case," and the plaintiff had to write the first draft of the letter to his psychiatrist; (11) the union failed to review records of other telephone lines, which "would have revealed that a number of other employees were engaging in lengthy personal telephone calls during their working hours using company phones"; (12) Loudermilk failed to check on the credibility of the plaintiff's supervisor, Stupinski, and Fowler said that her view of the case might have changed if she had been informed of "the inconsistency in Mr. Stupinski's story"; (13) he was not invited to be present at the Grievance Committee meeting at which the possibility of taking his grievance to arbitration was discussed; (14) there was a history of hostility between Loudermilk and the plaintiff and constant conflict between the plaintiff and two of Loudermilk's friends, Leo LeClerc and Barry Jones, and Loudermilk had a conflict of interest with respect to the plaintiff's grievance because the plaintiff had more seniority than Loudermilk did; and (15) in "the year preceding" the discharge, the plaintiff had been trying to pursue a grievance about pension credits possibly earned during a layoff "many years earlier," and Loudermilk brought in the union's international business representative, Joe Flanders, to handle the grievance, but Flanders treated the plaintiff "disdainfully and refused to shake his hand," did not like the plaintiff, and "would be happy to be rid of him."  Plaintiff's Memorandum in Opposition to Defendant Local S7's Motion for Summary Judgment ("Union Opposition") (Docket No. 50) at [1]-[10]. Unfortunately, the plaintiff does not specify whether each of these factual assertions is asserted to be discriminatory, arbitrary, dishonest, or indicative of perfunctory handling of his grievance, the possible charges under *DelCostello*.  I take up each of the plaintiff's enumerated breaches of the union's duty of fair representation as follows.

### A.  LCA (items 2 and 9)

Whether the asserted breach is discriminatory, arbitrary, dishonest, or one of perfunctory handling matters not for the plaintiff's asserted breach of the union's duty concerning the LCA. The plaintiff agrees that "[o]n July 27, 2006, BIW agreed without prejudice to hold in abeyance the issue of the effect of the LCA pending the outcome of the grievance meeting and the Union's determination whether to arbitrate."  Union's SMF ¶ 73; Plaintiff's Responsive SMF ¶ 73.  The "grievance meeting" was held on August 8, 2006, *id*. ¶ 74, after which BIW denied the grievance, *id*. ¶ 84, and the union decided not to pursue arbitration, *id*. ¶ 85.  Accordingly, the date on which the LCA expired had no bearing on the plaintiff's termination.  Indeed, the union's agreement with BIW to hold in abeyance the question of when the LCA expired actually favored the plaintiff by removing a potential ground on which BIW could have based the plaintiff's termination.  This agreement, contrary to the plaintiff's argument, Union Opposition at [2], cannot reasonably be considered as evidence that BIW and the union had agreed in advance that the plaintiff's grievance would be denied.  I will therefore not consider further items 2 and 9, *supra*, in the plaintiff's list of evidence of the union's alleged breach of its duty of fair representation.

### B.  Failure to Arbitrate (items 1 and 5)

A union breaches its duty of fair representation by acting arbitrarily toward a union member "if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational."  *Emmanuel v. International Bhd. of Teamsters, Local Union No. 25*, 426 F.3d 416, 420 (1st Cir. 2005) (citation omitted).

> This standard requires the court to examine objectively the competence of the union's representation.  But in performing this objective

> evaluation, the reviewing court must accord the union's conduct
> substantial deference. This standard of review recognizes that unions
> must have ample latitude to perform their representative functions. . . .
>
> The duty of fair representation mandates that a union conduct at least
> a minimal investigation into an employee's grievance. But under this
> standard, only an egregious disregard for union members' rights
> constitutes a breach of the union's duty to investigate.

*Id.* (citations omitted). This is a "heavy burden" for employees. *Morales-Vallellanes v. Potter*, 339 F.3d 9, 16 (1st Cir. 2003). Failure to take a grievance to arbitration constitutes a breach of the duty of fair representation only when the union's "otherwise good faith decision is arbitrary." *Miller*, 985 F.2d at 12 (citation omitted). Mere negligence or erroneous judgment will not constitute a breach of this duty. *Id.*

Refusing to take to arbitration a claim that is the first of its kind at BIW is not, contrary to the plaintiff's assertion, Union Opposition at [1], "unreasonable on that basis alone." "Because an individual employee does not have an unfettered right to have each and every grievance taken to arbitration, the mere failure to take a dispute to arbitration does not establish liability." *Plumley v. Southern Container, Inc.*, 303 F.3d 364, 374-75 (1st Cir. 2002). If a union were liable for breach of its duty of fair representation any time it decided not to pursue arbitration on a claim novel to the employer involved, employers and unions would necessarily have to defend against and prosecute a greater number of meritless claims. Tellingly, the plaintiff offers no citation to authority for his assertion in this regard. Similarly, his assertion that "arbitration, or at least the threat of arbitration, is the only weapon in the Union's arsenal with any potency to challenge a discharge decision by management" such that a union must always take, or threaten to take, a grievance to arbitration in order to discharge its duty of fair representation, *id.* at [3], lacks any citation to authority and would impose on unions a duty well beyond that contemplated by the relevant case law. It may well be true that all discharges of Local S7 employees for which

an arbitration demand has been filed "[i]n recent history" at BIW, have been resolved by agreement, Plaintiff's SMF ¶ 51, but the important qualifier in this statement is "for which an arbitration demand has been filed."   Local S7 must still be free to determine whether to file a demand for arbitration in each case, based on the merits of that case.   Thus, neither item 1 nor item 5 in the plaintiff's list of alleged union breaches may reasonably be said to provide evidence of arbitrary action by the union in this case, nor of dishonesty, perfunctory treatment, or discrimination by the union.

### C.  Inadequate Investigation (item 11)

The plaintiff claims that the union's investigation of his grievance was fatally inadequate. He asserts that "[a] review of other phone lines would have revealed that a number of other employees were engaging in lengthy personal telephone calls during their working hours using company phones."   Union Opposition at [5].   As both defendants point out, BIW Responsive SMF ¶ 61, Union Responsive SMF ¶ 61, this factual assertion in the plaintiff's statement of material facts is not supported by the citation given to the summary judgment record.   The citation given is to Loudermilk's deposition.   Plaintiff's SMF ¶ 61.   The cited pages establish only that the plaintiff told Loudermilk that "there were a lot of other people out there that are using 9 lines as well" and that Loudermilk did not ask BIW to provide records of use of any outside telephone lines.   Deposition of Danny L. Loudermilk, Jr. ("Loudermilk Dep.") (Exh. 13 to BIW's SMF) at 69-70.   This is not evidence that "a number of other employees were engaging in lengthy personal telephone calls during their working hours using company phones" but only that the plaintiff made that allegation to Loudermilk who did not ask for other telephone records. The plaintiff has now had the benefit of discovery in this case, and it is his burden to include such evidence in the summary judgment record if he intends to rely on it.   All he offers at this

point is speculation about what such records would show.  That is not enough to defeat a motion for summary judgment.  Particularly given the high degree of deference that a court is required to given to a union's decisions in the grievance process, it is not possible to conclude that this failure on the part of the union demonstrates arbitrariness, dishonesty, bad faith, or discrimination.

### D.  Collusion (items 3, 4, 6, and 7)

The plaintiff offers three items that he contends show collusion between the union and BIW against him and thus conceivably arbitrary or discriminatory action: that the union "had arguments" that discipline had not been applied equally or progressively to the plaintiff "in clear violation of the language of the [CBA];" that the union had agreed to side with BIW before the August 8 meeting; and that the union steward knew before the June 27 meeting that management intended to suspend the plaintiff for alleged improper telephone use.  Union Opposition at [2]-[4].

The plaintiff's own presentation with respect to unidentified union arguments about progressive or equal discipline and a resulting violation of unspecified language in the CBA demonstrates that he does not claim that the union did anything wrong.  He asserts that Loudermilk presented these arguments to BIW at the August 8 meeting.  *Id*. at [2].  On the other hand, if he intends this assertion to support a contention that the union should have proceeded to demand arbitration based on these arguments, the legal standard, as set forth above, does not require a union to present arguments in arbitration merely because it has done so in connection with the grievance at the level below.  On either basis, I do not see how this action demonstrates any possible breach by the union of its duty of fair representation and will not consider item 3 further.

As for item 4, the plaintiff asserts that BIW's holding in abeyance the issue of the effect of the LCA "pending the outcome of the grievance meeting and the Union's determination whether to arbitrate," Union SMF ¶ 73; Plaintiff's SMF ¶ 73, could "certainly" lead a factfinder to conclude that "the end result had been predetermined by BIW and Local S7 and that the August [8] meeting was nothing but a charade."   Union Opposition at [2].   Nothing in the citation given in support of paragraph 73 of the union's statement of material facts supports the plaintiff's assertions that Loudermilk "acknowledged that he reached an agreement with BIW Labor Relations to hold the meeting on August [8]th and to set aside the issue of whether or not this matter was subject to the grievance process."   *Id.*   All that the paragraph says is "[o]n July 27, 2006, BIW agreed without prejudice to hold in abeyance the issue of the effect of the LCA pending the outcome of the grievance meeting and the union's determination whether to arbitrate."   Union SMF ¶ 73.   Even if the plaintiff's conclusions that Loudermilk sought this concession from BIW and that this arrangement "must be regarded as . . . unusual"[16] are credited, it is beyond the limits of reasonableness to draw the conclusion that the union had agreed with BIW on the outcome of the grievance in advance.   Only speculation could lead to that conclusion, and speculation does not provide an appropriate basis for sending a given claim to trial.

Item 6 in the plaintiff's factual catalog is the assertion that Harvey, the union steward, knew that Tower intended to suspend the plaintiff before the June 27 meeting at which he was suspended took place.   Union Opposition at [3]-[4].   This assertion is proffered as evidence that the union's efforts on the plaintiff's behalf were weak.   *Id.* at [3].   I do not see how the premise

---

[16] I do not give any weight to the plaintiff's characterization of this agreement as involving "a union . . . discussing its decision making process on whether to arbitrate a case on behalf of one of its members with management prior to management issuing a final decision on the grievance."   Union Opposition at [2].   This is simply not a reasonable inference to be drawn from the facts presented.

supports the conclusion, and the plaintiff is silent about what Harvey should have done with this knowledge that he did not do.  In any event, the assertion is based on paragraph 54 of the plaintiff's statement of material facts, *id*. at [4], to which both defendants have objected as constituting hearsay.  The authority cited by the plaintiff in support of paragraph 54 is the deposition testimony of Cindy Fowler.  Plaintiff's SMF ¶ 54.  Deposition of Cynthia Fowler (Exh. 16 to BIW SMF) at 16:3-17:4.  The defendants' hearsay objection is well-taken. The paragraph cannot be considered by the court, and there is thus no evidentiary basis for any argument based on this fact.  I will not consider item 6 further.

Item 7 is related to item 6.  The plaintiff asserts that Fowler tried to change her deposition testimony in some unspecified fashion "after discussing it with Union counsel during the break in her deposition" and that "this change of course lacked credibility."  Union Opposition at [4]. Since no party relies on any changed testimony by Fowler to support its motion for summary judgment, and since the "unchanged" prior testimony is apparently the hearsay discussed above, this line of argument is unavailing.  In addition, this item is supported in the plaintiff's memorandum of law only by a direct citation to the summary judgment record.  Any factual assertions on which a party seeking or opposing summary judgment wishes to rely must be included in that party's statement of material facts.  Direct citation to the record in a brief is not acceptable.  Thus, the plaintiff gains nothing from item 7.

### E.  Lack of Counseling (item 8)

The plaintiff next offers as "strong evidence of hostile intent" that the union allowed him to enter the grievance meeting without appropriate counseling and that as a result he provided significant information to BIW "which BIW deemed to be negative evidence against [me]."  *Id.* The plaintiff maintains that it was the normal practice of the union to prepare its members for

disciplinary meetings by "coaching them not to volunteer any more information than necessary." *Id*. Because he admitted to certain "negative evidence" at the meeting, the plaintiff asserts, a factfinder can only conclude that he was not coached before the meeting by the union in accordance with its usual practice. This argument again assumes too much. The mere fact that the defendant made damaging admissions does not permit the conclusion that he did so because the union departed from its usual practice. It is entirely possible that all the coaching in the world could not have forestalled the plaintiff's admissions, given, for example, his repeated assertions that many other employees were engaging in as much personal use of BIW's telephone lines as he was. The plaintiff's sworn statement that the union did not give him any coaching before the meeting at issue, in combination with evidence that such coaching was its usual practice, would allow a factfinder to draw the conclusion that the plaintiff espouses. The fact that the plaintiff made damaging admissions at the meeting, merely combined with the evidence of the union's usual pre-meeting practice, however, does not. I will not consider item 8 further.

### F.  Lack of Enthusiasm (item 10)

As an illustration of Loudermilk's alleged "lack of enthusiasm towards [the plaintiff] and his future at BIW," the plaintiff raises Loudermilk's reluctance to write to the plaintiff's psychiatrist for information "helpful to his case." Union Opposition at [4]-[5]. Of course, the applicable standard for breach of the duty of fair representation does not require a union official to undertake his duty to a member "enthusiastically." Assuming that the plaintiff means to offer this reluctance as evidence of hostility, it does not rise to that level. As the plaintiff himself acknowledges, Plaintiff's SMF ¶ 58, Loudermilk testified that this was "[j]ust my approach." Loudermilk Dep. at 36:18. The plaintiff has not shown that Loudermilk treated him differently

in this regard from the manner in which he treated any other union member under similar circumstances.  Item 10 adds nothing to the plaintiff's claim for breach of the duty of fair representation.

### G.  Arbitrary Treatment (item 12)

In an assertion that apparently goes to the union's allegedly arbitrary treatment of him, the plaintiff, in item 12 of his catalog, faults Loudermilk for failing to check on the credibility of the plaintiff's supervisor, Stupinski, who, according to the plaintiff, found the plaintiff's performance adequate but claimed "after the fact" that he had received complaints about the plaintiff's performance.  Union Opposition at [6].  The authority cited for this assertion, Paragraph 62 of the plaintiff's statement of material facts, relies in turn on Loudermilk's deposition testimony.  Plaintiff's SMF ¶ 62.  That testimony relates that Stupinski told Loudermilk that the plaintiff's performance was adequate and, in the same conversation, told Loudermilk that he had been receiving complaints about the plaintiff's performance from other members of Local S7.  Loudermilk Dep. at 32:21-33:13.  This testimony does not support the characterization that Stupinski claimed "after the fact" that he had received such complaints.

The plaintiff asserts that Loudermilk "did not pursue the issue of the identity of these alleged complainants any further" and characterizes this as "suspect."  Union Opposition at [6]. His citation for this assertion, paragraph 63 of his statement of material facts, is supported by a citation to Loudermilk's deposition which establishes only that Stupinski "wouldn't give us names," but not that Loudermilk did not pursue the identities of the complainants any further. Loudermilk Dep. at 33:11-13.  In any event, a failure to push for the names of others who had complained about the plaintiff's job performance could have had no effect on BIW's decision to terminate the plaintiff for fraud, and specifically for excessive personal telephone use.  Union

SMF ¶¶ 61, 84.  This alleged failure to further investigate cannot reasonably be considered to evince "an egregious disregard" for the plaintiff's rights.  *Emmanuel*, 426 F.3d at 420.

The plaintiff contends that Loudermilk undermined his credibility before the grievance committee because Loudermilk "did not bother to check with [the plaintiff's steward] Mr. Westlake to confirm [the plaintiff's] information" that he had told Westlake about Stupinski's alleged advice that he could make personal calls up to 45 minutes in length without "rais[ing] flags."  Union Opposition at [6].  I do not see how the fact that the plaintiff had told someone else about his characterization of what Stupinski said to him about lengthy personal calls makes the plaintiff's characterization any more likely to be accurate.  Again, the *Emmanuel* standard is not met.

The plaintiff also faults Loudermilk for not following up on Stupinski's denial of the plaintiff's claim that Stupinski had told him that personal calls under 45 minutes in length "would not raise flags despite the fact that he had given the very same advice to another worker under his supervision."  Union Opposition at [6].  This "inconsistency" is the one identified by the plaintiff as the one that might have changed Fowler's view of the case had she been informed of it.  *Id*.  But the paragraphs of the plaintiff's statement of material facts that support this assertion and the related allegation that Loudermilk did not advise the members of the grievance committee of this "inconsistency" are unsupported by any citation to the summary judgment record, as noted by the defendants, BIW's Responsive SMF ¶¶ 68-69, Union Responsive SMF ¶¶ 68-69, and thus may not be considered by the court.

### H.  Plaintiff Not Invited (item 13)

Item 13 in the plaintiff's factual catalog is the fact that he was not invited to be present at the meeting of the grievance committee at which the possibility of taking his grievance to

arbitration was discussed.  He dismisses the fact that it is not the committee's practice to invite affected employees to these meetings because "[t]here is apparently no written policy that formalizes this practice one way or the other."  Union Opposition at [7].  He goes on to admit that '[i]t is difficult to say whether [his] presence at the Grievance Committee meeting would have changed the Committee's mind[;] however, removing the cloak of secrecy . . . may very well have given him another chance of doing so." *Id*. at [7]-[8].

First, the fact that it is undisputed that the union's practice was not to invite the members whose grievances were being discussed to those meetings, Union's SMF ¶ 105, Plaintiff's Responsive SMF ¶ 105, is highly relevant to the plaintiff's claim that the failure to invite him is evidence of the union's hostility toward him, whether or not the practice is reduced to writing. Treating the plaintiff as all other union members similarly situated are treated cannot be evidence of hostility toward the plaintiff. *See Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975).

Further, the plaintiff offers nothing beyond speculation as to whether the grievance committee would have voted differently had he been invited to be present.  Contrary to the plaintiff's suggestion, Union Opposition at [8], the union's failure to invite him to attend its meeting cannot reasonably be construed, under the circumstances, as evidence of bad faith.  Item 13 does not establish a breach of the duty of fair representation.

### I.  History of Hostility (item 14)

Item 14 is an assertion that a history of hostility between Loudermilk and the plaintiff and between the plaintiff and two of Loudermilk's friends is sufficient to support a conclusion that the union treated him with an illegal degree of hostility. *Id*. at [8]-[9].  This hostility, the plaintiff suggests, arose out of the fact that he had more seniority for purpose of layoff than any of the

three. *Id*. at [9].  He discusses in addition an incident that "goes back several years" when Loudermilk "took offense to contact between [the plaintiff] and himself during some episode of work place banter," turned the plaintiff in for it, and alleged that the plaintiff threatened him as a result. *Id*. at [8].  Again, the plaintiff provides only a direct citation to the summary judgment record in support of the latter recitation, which is not acceptable under this court's Local Rule 56. I will not consider this incident further.  With respect to the hostility due to seniority, the defendants essentially agree that there was a conflict over this issue.  Plaintiff's SMF ¶ 71; BIW's Responsive SMF ¶ 71; Union Responsive SMF ¶ 71.  Accepting all that the plaintiff submits in the cited paragraphs of his statement of material facts on this issue, Union Opposition at [8]-[9], Plaintiff's SMF ¶¶ 71-73, no reasonable factfinder could conclude that Loudermilk "had an inherent conflict of interest over his continued employment with Bath Iron Works" or such a "history of hostility with" the plaintiff that his treatment of the plaintiff's grievance demonstrates an egregious disregard for the plaintiff's rights.

## J.  Disdain for the Plaintiff (item 15)

Finally, item 15 in the plaintiff's catechism asserts that the alleged disdain with which he was treated by the union's international business representative is evidence of the union's "mishandling" of his grievance.  Union Opposition at [9]-[10].  As the defendants point out, BIW's Responsive SMF ¶ 74, Union Responsive SMF ¶ 74, the record cited by the plaintiff establishes only that the representative, Joe Flanders, refused to shake his hand.  Plaintiff's Dep. at 265.  Flanders' alleged "disdain" for the plaintiff is a gloss which the plaintiff has added to this fact.  There is nothing in the plaintiff's statement of material facts to support the plaintiff's assertion that Flanders "didn't like him, and he would be happy to be rid of him."  Union Opposition at [10].  The parties agree that Flanders told Loudermilk that he did not think that the

union could win an arbitration of the plaintiff's grievance.   Plaintiff's SMF ¶ 77; Bath Iron

Works Corporation's Reply to Thomas M. Brooks' Statement of Material Facts (Docket No. 60)

¶ 77; Union Responsive SMF ¶ 77.  The defendants appropriately object to the plaintiff's further

assertion, however, that Flanders' opinion was shared with the grievance committee; the

plaintiff's cited evidentiary basis for that assertion is hearsay.   Accordingly, there is no

admissible evidence in the summary judgment record that Flanders' opinion of the prospects for

the plaintiff's grievance could have had any effect on the grievance committee's decision.  And,

Flanders himself has not been shown to have egregiously disregarded the plaintiff's rights with

respect to the grievance at issue.

Having rejected individually each of the factual bases proffered by the plaintiff for his

claim against the union, I consider as well the combined effect of those bases for which adequate

evidentiary support was provided by the plaintiff.  I conclude that even such a combination of

factors does not and could not, if presented to a reasonable factfinder, rise to the level of the

*Emmanuel* standard.  This conclusion makes it unnecessary to address the plaintiff's claim that

BIW violated the CBA.  Accordingly, I recommend that summary judgment be entered for the

defendants on Counts I and II (the First and Second Claims), which comprise the hybrid action.

### 2. *The Discrimination Claims: Counts III-V (Third through Fifth Claims)*

The amended complaint alleges that BIW violated 42 U.S.C. § 2000e-2 by discriminating

against him based on his disability or perceived disability (Count III/Third Claim), that the union

did likewise (Count IV/Fourth Claim), and that both defendants violated the Maine Human

Rights Act ("MHRA"), 5 M.R.S.A. § 4551 *et seq*. (Count V/Fifth Claim).  Amended Complaint

¶¶ 38-48.  As BIW points out, BIW Motion at 13, the plaintiff has invoked the federal Civil

Rights Act, 42 U.S.C. § 2000e-2, which does not address individuals with disabilities.  The

defendants assume that the plaintiff means to invoke the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq. Id.*; Union Motion at 20. The plaintiff does not address this directly, but casts his arguments in terms of the ADA. Plaintiff's Memorandum in Opposition to Defendant BIW's Motion for Summary Judgment ("BIW Opposition") (Docket No. 49) at 11-20. I agree that it is the ADA that the plaintiff meant to invoke and will deal with Counts III and IV accordingly.

The ADA provides, in relevant part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). When a defendant in a case alleging violation of the ADA moves for summary judgment, the plaintiff must produce evidence to support a *prima facie* case, composed of the following elements: (1) the plaintiff was disabled within the meaning of the ADA, (2) the plaintiff was qualified to perform the essential functions of the job at issue, with or without reasonable accommodations, and (3) the defendant employer took adverse action against the plaintiff because of his disability. *Sánchez-Figueroa v. Banco Popular de Puerto Rico*, 527 F.3d 209, 213 (1st Cir. 2008).

BIW contends that the plaintiff is not disabled within the meaning of the ADA and that, in any event, the plaintiff cannot establish that BIW terminated him because of any disability he might have. BIW Motion at 14-17. The plaintiff focuses on the first argument and does not address the second, with the possible exception of an assertion that the timing of the discharge "strongly support[s] an inference of disability discrimination." BIW Opposition at 11-20. BIW's second argument is dispositive here.

BIW's properly-supported factual assertion that the plaintiff's bi-polar disease or ADHD played no part in the decision to terminate him, BIW's SMF ¶ 52,  would not have been properly disputed by the plaintiff, even if his response had been timely filed, because his response is not supported in any event by any citation to the summary judgment record.  Plaintiff's Response to Bath Iron Works Corporation's Statement of Undisputed Material Facts  ("Plaintiff's BIW Responsive SMF") (Attachment 3 to Docket No. 65) ¶ 52.[17]  To the extent that the plaintiff means to rely on some other specific mental disability, such as the "hyperthymic personality" diagnosed by his treating psychiatrist, BIW Opposition at 13, the plaintiff still fails to provide evidence to establish the third element of his *prima facie* case because his conclusory statement about the timing of his discharge does not explain why the timing of the discharge was critical. The discharge occurred on July 10, 2006.  BIW's SMF ¶ 41; Union SMF ¶ 61; Plaintiff's Responsive SMF ¶ 61.  The plaintiff simply does not say what other event is sufficiently close in time to July 10, 2006 to allow a reasonable factfinder to infer that BIW discharged the plaintiff as a result of his alleged disability.  BIW Opposition at 11-20.  In *Katz v. City Metal Co.*, 87 F.3d 26 (1st Cir. 1996), the only authority cited by the plaintiff on this point, *id*. at 20, the plaintiff was fired one month after having a heart attack, the manifestation of his alleged disability, 887 F.3d at 33.  The First Circuit held that this was sufficient circumstantial evidence to allow a jury to find that the disability triggered his firing.  *Id.*   Here, the plaintiff is silent with respect to the other side of the temporal bridge on which he relies.

---

[17] The only reference to the summary judgment record included in the plaintiff's response to paragraph 52 of BIW's statement of material facts is a reference to paragraphs 95-108 of the plaintiff's own statement of material facts. Plaintiff's BIW Responsive SMF ¶ 52.  Those paragraphs deal with the knowledge of other individuals at BIW of the plaintiff's mental disability, not including the individuals who made the decision to terminate him, and do not respond to the assertion in paragraph 52 of BIW's statement of material facts that the two alleged mental disabilities suffered by the plaintiff played no role in the decision to terminate him.

On the showing made, the plaintiff has failed to make out a *prima facie* case under the ADA against BIW, *see generally Medina-Munoz v. R. J. Reynolds Tobacco Co*., 896 F.2d 5, 8 (1st Cir. 1990) (summary judgment appropriate where nonmoving party rests upon conclusory allegations and unsupported speculation), and BIW is accordingly entitled to summary judgment on Count III of the amended complaint.

The union first argues that it is entitled to summary judgment on Counts IV and V of the amended complaint because the plaintiff "has adduced no evidence but offers only conclusory allegations in support of his claim of discrimination by the Union."  Union Motion at 19.  The First Circuit in *Medina-Munoz*, the authority cited by the union on this point, evaluated each prong of the applicable summary judgment test in this regard, rather than dismissing the plaintiff's claim as a whole for this reason, and that is an approach that I find preferable.  The plaintiff here has certainly proffered what he considers to be evidence; the question is whether that evidence is sufficient to meet his burden in opposing the motion for summary judgment on each of his specific claims.[18]

The union finds more success with its second global argument: that the union cannot be held liable for either the ADA claim or the MHRA claim because the plaintiff failed to provide sufficient evidence to allow a reasonable factfinder to conclude that it breached its duty of fair representation to the plaintiff, and such a finding is a necessary prerequisite to recovery on a discrimination claim arising out of the same facts.  Union Motion at 20.  This is the rule adopted by the Eighth Circuit.  *Wood v. Crown Redi-Mix, Inc.*, 218 F.Supp.2d 1094, 1106 (S.D. Iowa 2002) (citing *Martin v. Local 1513 & Dist. 188 of Int'l Ass'n of Machinists & Aerospace Workers*, 859 F.2d 581, 584 (8th Cir. 1988)).  The First Circuit has apparently not yet spoken on

---

[18] The plaintiff has not responded to the union's motion for summary judgment on his discrimination claims.  The court must nonetheless address the merits of the union's motion on these claims.  *DeJesús v. LTT Card Servs., Inc.*, 474 F.3d 16, 20-21 (1st Cir. 2007).

this issue, but this court has done so. *See Greenier v. PACE, Local No. 1188*, 201 F.Supp.2d 172, 183 (D. Me. 2002). Because I have already concluded that the union is entitled to summary judgment on the plaintiff's claim of breach of the duty of fair representation, I conclude that his ADA claim arising out of the same facts must also fail. *See generally Nweke v. Prudential Ins. Co.*, 25 F.Supp.2d 203, 219 (S.D.N.Y. 1998).

The union assumes that this legal standard applies to claims under the MHRA as well, merely stating that the MHRA "generally follows the ADA," without citing to authority. Union Motion at 20.[19] Claims under the ADA and the MHRA are subject to identical legal analysis. *Higgins v. New Balance Athletic Shoe, Inc.*, 21 F.Supp.2d 66, 71 (D. Me. 1998) (vacated on other grounds, 194 F.3d 252, 264-65 (1st Cir. 1999)). This makes it unnecessary to consider Count V of the amended complaint separately, whether it is read as asserted against both defendants or only against BIW.

### III. Conclusion

For the foregoing reasons, the union's motion to strike (Docket No. 61) is **DENIED**; the plaintiff's motion to extend time to file (Docket No. 65) is **GRANTED** as to Docket No. 54 and otherwise **DENIED**; and I recommend that the defendants' motions for summary judgment (Docket Nos. 34 & 38) be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,*

---

[19] It is not clear that the plaintiff means to assert his MHRA claim against the union. The claim itself mentions only BIW. Amended Complaint ¶¶ 46-48. The demand for relief, however, asks for declaratory judgment that "Defendants" violated 5 M.R.S.A. § 4572. I include this discussion in the event that the amended complaint is read to charge the union with a violation of the MHRA.

*within ten (10) days after being served with a copy thereof.   A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 3rd day of October, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge